## Case No. 5,311.

### The GENERAL FRANZ SIGEL

[6 Ben. 550.] [1]

District Court, S. D. New York.  June, 1874. [2]

COLLISION IN EAST RIVER—STEAMBOATS CROSSING—CHANGE OF COURSE—NEARNESS TO PIERS.

1. A ferry-boat was crossing the East river from New York to Brooklyn. The tide being strong ebb, she went above her slip, to drop down with the tide. Her pilot saw a steamboat, heavily loaded, coming slowly up the river on his starboard hand, close in to the Brooklyn piers. He blew two whistles, indicating that he intended to go ahead of the other boat, although her position was such that he could not do so unless she changed her course. The whistles were not heard, and the steamboat kept on. Thereupon the ferry-boat stopped her engine, but did not reverse it, till the steamboat had proceeded so far as to strike a cross tide, which set her out from the piers. The pilot of the ferry-boat then reversed the engine, but too late, and the vessels came together. The pilot of the steamboat made no change in her helm, and stopped and reversed her engine as soon as he saw there was danger of collision: Held, that the ferry-boat having the steamboat on her starboard side, was bound to keep out of her way, and the steamboat was bound to keep her course.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

2 [Affirmed in Case No. 5,062.]

2. The swinging out of the steamboat, when she met the cross tide, was not a change of her course.

3. As the pilot of each vessel saw the other in time to execute all manoeuvres incumbent to avoid a collision, the question of lookout had nothing to do with the collision.

[Cited in The George Murray, 22 Fed. 122; The Coe F. Young, 1 C. C. A. 219, 49 Fed. 168.]

4. The closeness of the steamboat to the piers did not contribute to the collision.

5. The pilot of the ferry-boat should have taken the measures to avoid the steamboat, which were necessary, under the circumstances, and that the ferry-boat was solely in fault.

In admiralty.

C. Donohue, for libellants.

E. H. Owen, for claimants.

BLATCHFORD, District Judge. This is a libel to recover the damages sustained by the libellants in consequence of injuries sustained by the steam ferry-boat George Washington, through a collision which took place between her and the steamboat Gen. Franz Sigel, in the East river, on the 19th of July, 1871, in the day time. The ferry-boat was a side-wheel steamboat running on a ferry between Oliver street slip, New York, and the foot of Bridge street, Brooklyn, and was, at the time, on a trip from New York to Brooklyn. The Sigel was a propeller, and was deeply laden with a cargo of hogsheads of sugar, which she was taking from Prentice's stores, in Brooklyn, below Bridge street, to the foot of Gold street, Brooklyn, above Bridge street. The tide was strong ebb, and the wind was blowing fresh down the river and with the tide.

The libel alleges, that, as the ferry-boat was proceeding on her trip, the Sigel was observed going up the East river, in violation of law, close on to the docks on the Brooklyn shore; that, when the ferry-boat had headed for Brooklyn, to head for her slip, the Sigel still keeping unlawfully close to the docks, the ferry-boat was stopped; that the Sigel continued on until near the line of the heading of the ferry-boat, when she suddenly sheered out on to the ferry-boat, without any notice; that, although the ferry-boat was backed, and all in the power of those on board was done to avoid the collision, the Sigel hit the ferry-boat, damaging her badly; that the collision happened wholly by the fault of those on the Sigel, in violating the law by not keeping a lookout, in not in time taking proper steps to avoid a collision, and in sheering out on to the ferry-boat; and that the collision happened without the fault of those on the ferry-boat, and could not have been prevented by them.

The answer denies these allegations of the libel, and avers, that, when the Sigel was a little below the ferry slip at the foot of Bridge street, Brooklyn, and more than three hundred feet from the docks on the Brooklyn shore, the ferry-boat, which, owing to the wind and tide, and in order to make the slip at the foot of Bridge street, had proceeded up the river a considerable distance above the slip, and was floating down with her broadside to the wind and current, was carried by the force of the wind and tide below the said slip, and drifted upon the Sigel; that the pilot on the Sigel, as soon as he saw there was any danger of a collision, stopped the Sigel, and reversed her engine, and did all in his power to avoid it; that, the Sigel being heavily laden, and deep in the water, while the ferry-boat was light, and high out of the water, and had her broadside to the wind and current, no effort on the part of the pilot of the Sigel availed to prevent the ferry-boat from coming upon the Sigel; that the collision happened without the fault of those in command of the Sigel, and could not have been avoided by any skill or care on their part; that it happened wholly through the fault, want of skill and mismanagement of those in charge of the ferry-boat, in their permitting her to drift with the wind and tide in the manner they did, and in not taking any steps whatever to avoid the collision; and that the collision could have been avoided by the ferry-boat, had she either gone ahead in proper time and entered the slip, or had she backed when it was found she was drifting below the slip.

The libel sets up three faults on the part of the Sigel as causing the collision—violating the law by not keeping a lookout—not in time taking proper steps to avoid a collision—sheering out on to the ferry-boat.

As to a lookout, the question of a lookout on either vessel had, according to the evidence, nothing to do with the collision. The pilot of each vessel saw the other vessel in abundant season to execute all manoeuvres incumbent to avoid a collision.

As to the taking of steps by the Sigel to avoid a collision, it was not her duty to do so, in the first instance. The vessels were crossing, so as to involve risk of collision. The ferry-boat had the Sigel on her own starboard side, and therefore, by rule 14, was bound to keep out of the way of the Sigel, and the Sigel, by rule 18, was bound to keep her course.

As to the sheering out of the Sigel on to the ferry-boat, the setting up, in the libel, of the fact of such sheering, recognizes the duty of the ferry-boat to keep out of the way of the Sigel. No excuse is alleged, in the libel, why the ferry-boat did not keep out of the way of the Sigel, except that the Sigel sheered on to the ferry-boat, without any notice. This implies a voluntary sheering of the Sigel, a sheering which was unexpected to the ferry-boat, which the ferry-boat had no notice of and no reason to expect would occur, a sheering which the Sigel had an election to make or not to make, and which the ferry-boat could have no knowledge would occur unless pre-

viously notified by the Sigel that it would occur. But, the evidence of the pilot of the ferry-boat is, that when he was on the New York side of the river, he saw the Sigel going up close, as he thought, to the Brooklyn docks, and not more, as he thought, than ten or fifteen feet from the ends of such docks. The evidence also is, that, in the then state of the tide, a vessel going up at that distance from the docks must, when she reaches the place where the Sigel is said to have sheered, be struck on her starboard bow by a cross tide from above setting out from the Brooklyn shore. It is also the weight of the evidence, that, whatever distance off from the Brooklyn shore the Sigel was in her passage up, when she was first seen by the pilot of the ferry-boat, she continued the same distance off, neither approaching to nor receding from the Brooklyn shore until she began to take the alleged sheer; that whatever sheer she took was wholly caused by the cross tide referred to; that her pilot did not starboard his helm, or take a sheer in any voluntary or active sense, but ported his helm, against the cross tide; that he stopped and reversed his engine as soon as he saw there was danger of a collision; that his boat was a slow boat, heavily loaded and loaded by the head; that she was a well known boat in the waters she was in, being constantly engaged in carrying like cargoes between the two points between which she was then plying; that her condition as to quantity of cargo and the manner of her loading were plainly visible to the pilot of the ferry-boat; and that her speed all the way up, and before she struck the cross tide, was very low, making it evident that the effect of the cross tide upon her would be serious. In view of all this, I can see no fault on the part of the Sigel contributing to the collision. On the contrary, the ferry-boat, with a knowledge actual or imputable, on the part of her pilot, of the state and action of the tides, and of the predicament, position, and capabilities of the Sigel, and with a duty, incumbent on the ferry-boat, to avoid the Sigel, undertook, when the Sigel was two or three piers below the slip which the ferry-boat was intending to enter, to compel the Sigel to get out of the way of the ferry-boat. For that purpose, the ferry-boat gave a signal of two blasts of her steam whistle, indicating that she intended to pass into her slip ahead of the Sigel, a thing which she could not do unless the Sigel should change her course. This signal was not heard on board of the Sigel, and, of course, was not answered by the Sigel. Thereupon, the ferry-boat stopped her engine, but she did not reverse it, and she continued to have upon her such headway as was due to her former impetus. During this time, her pilot says he saw the Sigel proceed up without changing her course, and without slackening her speed, until she passed across and beyond the mouth of the ferry-slip, the ferry-boat being, at the time, still further up the

river, with a view, as was usual and proper, of having the ebb tide carry her down, so she could enter her slip. Then the cross tide struck the Sigel. As soon as the pilot of the ferry-boat saw the effect of the cross tide on the Sigel, he backed his boat. But he should have backed sooner, or he should not have allowed his boat to get so near to the Sigel. The onward movement left to his boat, when he stopped, concurring with the wind and tide on his port broadside, carried his boat against the Sigel faster than it was possible for the Sigel to recede. I can see no fault in the Sigel.

The libel does not specify as a fault causing or contributing to the collision the Sigel's proximity to the Brooklyn docks. It alleges that the Sigel violated the law by her closeness to the docks. But the closeness of the Sigel to the docks was not, on the facts of this case, a fault contributing to the collision, if it was a fault at all, or a violation of law. The pilot of the ferry-boat saw just where the Sigel was and what she was, and was bound to know, on his own idea of her position, that she would do, when she struck the cross tide, just what it is shown she did do, and it would have been very easy for him to have kept farther off from her, and then have passed under her stern. The Sigel did not change her course, in any proper sense of the term, but kept it, and the ferry-boat, by proceeding on too far, drifted, by the action of the wind and tide, down upon the Sigel.

The libel must be dismissed, with costs.

[This decision was subsequently affirmed by the circuit court. Case No. 5,062.]